IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

IN RE: )
    ERICKA HAROLD, ) BK No. 16-30526
     )
Debtor. )

## MOTION FOR RELIEF FROM STAY

Now comes movant DRAKE HOLDINGS INC. d/b/a CNAC OF BELLEVILLE, hereinafter "creditor", by and through its attorney, Lawrence O. Taliana and moves this court for relief from the automatic stay. In support of the motion, movant state the following:

1. This court has jurisdiction pursuant to 28 USC 1334.
2. That this matter constitutes a core proceeding pursuant to 28 USC 157(b)(2)(G).
3. That debtor entered into a loan agreement with creditor secured by a 2010 Chevrolet Impala, a copy of the agreement is Exhibit A associated with this motion.
4. That creditor's secured interest was perfected and noted on the title, a copy of the title is Exhibit B associated with this motion.
5. That the vehicle has a current value of $8,000.00.
6. That the debtor is delinquent $228.46 as of May 20, 2016 and owes $11,883.99 principal and interest.
7. That the plan provides for surrender of the vehicle and does not propose to cure any arrearage.

8. That the 14-day stay of order Bankruptcy Rule 4001(a)(3) should not apply.

Wherefore, creditor prays this court enter an order lifting the automatic stay and order that the 14-day stay period of Bankruptcy Rule 4001(a)(3) not go into effect, or for whatever further or different relief the court deems appropriate.

/s/ Lawrence O. Taliana

TALIANA, BUCKLEY & ASA
216 N. Main Street
P.O. Box 627
Edwardsville, IL 62025

| RETAIL INSTALLMENT CONTRACT AND SECURITY AGREEMENT | Seller<br>Drake Automotive Inc dba JD Byrider<br>d/b/a J. D. Byrider of Belleville<br>4101 North Belt West<br>Belleville, IL 62226 | Buyer<br>Ericka Harold<br>Antione Stevenson<br>1605 BAUGH AVE APT C,<br>EAST SAINT LOUIS, IL, 62205 |
|---|---|---|
| No. B4185 | | |
| Date   10/9/2015 | "We" and "us" mean the Seller above, its successors and assigns. | "You" and "your" mean each Buyer above, and guarantor, jointly and individually. |

**SALE:** You agree to purchase from us, on a time basis, subject to the terms and conditions of this contract and security agreement (Contract), the Motor Vehicle (Vehicle) and services described below. The Vehicle is sold in its present condition, together with the usual accessories and attachments. Any unfulfilled Contract obligations you initially owe the Seller will be assigned each time the Contract itself is assigned. These obligations include your obligation to pay the unpaid portion of the cash down payment, deferred down payment, and scheduled payments reflected in the Contract. All rights and remedies initially held by the Seller under this Contract will also be assigned each time the Contract itself is assigned. Before assignment, the terms "we," "us," and "our" in the Contract refer to the Seller identified above. After assignment, the terms "we," "us," and "our" in the Contract will refer to any entity that has acquired and taken assignment of the Contract. Your Contract obligations or our rights and remedies may not be separated from each other, or denied to any assignee, based on any assignment of the Contract.

| Description of Motor Vehicle Purchased | Year 2010<br>Make CHEVROLET<br>Model IMPALA | VIN 2G1WB5EK5A1205503<br>Lic. No./Year<br>☐ New ☒ Used | Other:<br>NOTICE: This contract and security agreement are subject to a security interest in favor of First Merit Bank, N.A., 106 South Main Street Akron Ohio 44308, 330 384 7831. No sale or assignment of this contract and security agreement is effective without the express written consent of First Merit Bank. |
|---|---|---|---|

Description of Trade-In

**PROMISE TO PAY AND PAYMENT TERMS:** You promise to pay us the principal amount of $ 11,449.38 _____, plus finance charges accruing on the unpaid balance at the rate of 22.900 % per year from today's date until maturity. Finance charges accrue on a actual/365 _____ day basis. After maturity, or after you default and we demand payment, we will earn finance charges on the unpaid balance at 22.900 % per year. You agree to pay this Contract according to the payment schedule and by paying the amount stated in the Amount of Payments box shown in the TRUTH IN LENDING DISCLOSURES, or a greater amount. You agree that any payment made that exceeds the amount shown in the Amount of Payments box will be applied to reduce the principal amount you owe, unless you and we agree otherwise in writing. You also agree to pay the late charge shown in the TRUTH IN LENDING DISCLOSURES. You also agree to pay any additional amounts according to the terms and conditions of this Contract.

☐ **ADDITIONAL FINANCE CHARGE:** You agree to pay an additional, nonrefundable finance charge of $ 0.00 _____ that will be ☒ paid in cash. ☐ added to the Cash Price. ☐ paid proportionally with each payment.

☒ **DOCUMENTARY FEE:** You agree to pay a documentary fee of $ 166.27 _____.

**DOWN PAYMENT:** You also agree to pay, or apply to the Cash Price, on or before today's date, any cash, rebate and net trade-in value described in the ITEMIZATION OF AMOUNT FINANCED. ☒ As part of the cash down payment for your Contract, you promise to pay us the full amount of the deferred down payments as reflected in your Payment Schedule and your Itemization of Amount Financed.

**TRUTH IN LENDING DISCLOSURES**

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | AMOUNT FINANCED<br>The amount of credit provided to you or on your behalf. | TOTAL OF PAYMENTS<br>The amount you will have paid when you have made all scheduled payments. | TOTAL SALE PRICE<br>The total cost of your purchase on credit, including your down payment of $ 2,810.00 |
|---|---|---|---|---|
| 22.900 % | $ 6,641.86 | $ 11,449.38 | $ 20,451.24 | $ 20,901.24 |

Payment Schedule: Your payment schedule will be

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 1 | 800.00 | Deferred down payment due on 02/12/2016 |
| 8 | 195.00 | Bi-Weekly equal deferred down payments due beginning: 10/23/2015 ending: 01/29/2016 |
| 94 | 192.46 | Bi-Weekly beginning 2/19/2016 |

**Security:** You are giving a security interest in the Motor Vehicle purchased. ☒ If checked, you are entering into a Wage Assignment Agreement to secure payment of this Contract.

☐ **Late Charge:** If a payment is more than N/A _____ days late, you will be charged N/A _____
N/A _____.

**Prepayment:** If you pay off this Contract early, you will not have to pay a penalty.
☐ If you pay off this Contract early, you will not be entitled to a refund of part of the Additional Finance Charge.

**Contract Provisions:** You can see the terms of this Contract for any additional information about nonpayment, default, any required repayment before the scheduled date, and prepayment refunds and penalties.


ILLINOIS RETAIL INSTALLMENT CONTRACT AND SECURITY AGREEMENT
MOTOR VEHICLE - NOT FOR MANUFACTURED HOMES
© 1995, 1996 Wolters Kluwer Financial Services - Bankers Systems™ Form JD-RSMVLZ-IL 8/23/2013 (Rev. 6/13)

 
10/9/2015 3:02:05 PM

 (page 1 of 6)


EXHIBIT A

**COPY - NON NEGOTIABLE**

| RETAIL INSTALLMENT CONTRACT AND SECURITY AGREEMENT No. B4185 | Seller<br>Drake Automotive Inc dba JD Byrider<br>d/b/a J. D. Byrider of Belleville<br>4101 North Belt West<br>Belleville, IL 62226 | Buyer<br>Ericka Harold<br>Antione Stevenson<br>1605 BAUGH AVE APT C,<br>EAST SAINT LOUIS, IL, 62205 |
|---|---|---|
| Date    10/9/2015 | "We" and "us" mean the Seller above, its successors and assigns. | "You" and "your" mean each Buyer above, and guarantor, jointly and individually. |

**SALE:** You agree to purchase from us, on a time basis, subject to the terms and conditions of this contract and security agreement (Contract), the Motor Vehicle (Vehicle) and services described below. The Vehicle is sold in its present condition, together with the usual accessories and attachments. Any unfulfilled Contract obligations you initially owe the Seller will be assigned each time the Contract itself is assigned. These obligations include your obligation to pay the unpaid portion of the cash down payment, deferred down payment, and scheduled payments reflected in the Contract. All rights and remedies initially held by the Seller under this Contract will also be assigned each time the Contract itself is assigned. Before assignment, the terms "we," "us," and "our" in the Contract refer to the Seller identified above. After assignment, the terms "we," "us," and "our" in the Contract will refer to any entity that has acquired and taken assignment of the Contract. Your Contract obligations or our rights and remedies may not be separated from each other, or denied to any assignee, based on any assignment of the Contract.

| Description of Motor Vehicle Purchased | Year 2010<br>Make CHEVROLET<br>Model IMPALA | VIN 2G1WB5EK5A1205503<br>Lic. No./Year<br>☐ New ☒ Used | Other:<br>NOTICE: This contract and security agreement are subject to a security interest in favor of First Merit Bank, N.A., 106 South Main Street Akron Ohio 44308, 330 384 7831. No sale or assignment of this contract and security agreement is effective without the express written consent of First Merit Bank. |
|---|---|---|---|

Description of Trade-In _____

**PROMISE TO PAY AND PAYMENT TERMS:** You promise to pay us the principal amount of $ 11,449.38 , plus finance charges accruing on the unpaid balance at the rate of 22.900 % per year from today's date until maturity. Finance charges accrue on a actual/365 day basis. After maturity, or after you default and we demand payment, we will earn finance charges on the unpaid balance at 22.900 % per year. You agree to pay this Contract according to the payment schedule and by paying the amount stated in the Amount of Payments box shown in the TRUTH IN LENDING DISCLOSURES, or a greater amount. You agree that any payment made that exceeds the amount shown in the Amount of Payments box will be applied to reduce the principal amount you owe, unless you and we agree otherwise in writing. You also agree to pay the late charge shown in the TRUTH IN LENDING DISCLOSURES. You also agree to pay any additional amounts according to the terms and conditions of this Contract.

☐ **ADDITIONAL FINANCE CHARGE:** You agree to pay an additional, nonrefundable finance charge of $ 0.00 that will be ☒ paid in cash. ☐ added to the Cash Price. ☐ paid proportionally with each payment.

☒ **DOCUMENTARY FEE:** You agree to pay a documentary fee of $ 166.27 .

**DOWN PAYMENT:** You also agree to pay, or apply to the Cash Price, on or before today's date, any cash, rebate and net trade-in value described in the ITEMIZATION OF AMOUNT FINANCED. ☒ As part of the cash down payment for your Contract, you promise to pay us the full amount of the deferred down payments as reflected in your Payment Schedule and your Itemization of Amount Financed.

**TRUTH IN LENDING DISCLOSURES**

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | AMOUNT FINANCED<br>The amount of credit provided to you or on your behalf. | TOTAL OF PAYMENTS<br>The amount you will have paid when you have made all scheduled payments. | TOTAL SALE PRICE<br>The total cost of your purchase on credit, including your down payment of $ 2,810.00 |
|---|---|---|---|---|
| 22.900 % | $ 6,641.86 | $ 11,449.38 | $ 20,451.24 | $ 20,901.24 |

Payment Schedule: Your payment schedule will be

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 1 | 800.00 | Deferred down payment due on 02/12/2016 |
| 8 | 195.00 | Bi-Weekly equal deferred down payments due beginning: 10/23/2015 ending: 01/29/2016 |
| 94 | 192.46 | Bi-Weekly beginning 2/19/2016 |

**Security:** You are giving a security interest in the Motor Vehicle purchased. ☒ If checked, you are entering into a Wage Assignment Agreement to secure payment of this Contract.

☐ **Late Charge:** If a payment is more than N/A days late, you will be charged N/A N/A

**Prepayment:** If you pay off this Contract early, you will not have to pay a penalty.
   ☐ If you pay off this Contract early, you will not be entitled to a refund of part of the Additional Finance Charge.

**Contract Provisions:** You can see the terms of this Contract for any additional information about nonpayment, default, any required repayment before the scheduled date, and prepayment refunds and penalties.

ILLINOIS RETAIL INSTALLMENT CONTRACT AND SECURITY AGREEMENT
MOTOR VEHICLE - NOT FOR MANUFACTURED HOMES
© 1995, 1996 Wolters Kluwer Financial Services - Bankers Systems™ Form JD-RSMVLZ-IL 8/23/2013 (Rev. 8/13)

    

10/9/2015 3:02:05 PM

(page 1 of 6)

## ITEMIZATION OF AMOUNT FINANCED

| | | |
|---|---|---|
| Vehicle Price (incl. sales tax of $ 877.11 ) | $ | 13,872.11 |
| Optional Service Contract, Paid to: N/A | $ | 0.00 |
| Cash Price | $ | 13,872.11 |
| Manufacturer's Rebate | $ | 0.00 |
| Cash Down Payment | $ | 450.00 |
| Deferred Down Payment | $ | 2,360.00 |
| a. Total Cash/Rebate Down | | $2,810.00 |
| b. Trade-In Allowance | $ | 0.00 |
| c. Less: Amount owing | $ | 0.00 |
| Paid to: N/A | | |
| d. Net Trade-In (b. minus c.) | $ | 0.00 |
| e. Net Cash/Trade-In (a. plus d.) | $ | 2,810.00 |
| Down Payment (e.; disclose as $0 if negative) | $ | 2,810.00 |
| Unpaid Balance of Cash Price | $ | 11,062.11 |
| Paid to Public Officials - Filing Fees | $ | 196.00 |
| Insurance Premiums | $ | 0.00 |
| Amount to Finance line e. (if e. is negative) | $ | 0.00 |
| Additional Finance Charge(s), Paid to Seller | $ | 0.00 |
| Documentary Fee Paid To Seller | $ | 166.27 |
| To: Optional ERT Fee | $ | 25.00 |
| To: N/A | $ | 0.00 |
| To: N/A | $ | 0.00 |
| To: N/A | $ | 0.00 |
| Total Other Charges/Amounts Pd. to Others | $ | 387.27 |
| Less: Prepaid Finance Charges | $ | 0.00 |
| Amount Financed | $ | 11,449.38 |

We may retain or receive a portion of any amounts paid to others, except those fees paid to public officials.

**CREDIT INSURANCE:** Credit life, credit disability (accident and health), and any other insurance coverage quoted below, are not required to obtain credit and we will not provide them unless you sign and agree to pay the additional premium. If you want such insurance, we will obtain it for you (if you qualify for coverage). We are quoting below ONLY the coverages you have chosen to purchase.

Credit Life: Insured N/A
☐ Single ☐ Joint Prem. $ 0.00     Term N/A
Credit Disability: Insured N/A
☐ Single ☐ Joint Prem. $ 0.00     Term N/A

Your signature below means you want (only) the insurance coverage(s) quoted above. If none are quoted, you have declined any coverages we offered.

_____  _____   _____  _____
Buyer              Date     Buyer              Date

**PROPERTY INSURANCE:** You must insure the Property securing this Contract against any loss. You may purchase or provide the insurance through any insurance company reasonably acceptable to us. The collision and comprehensive coverage deductibles may each not exceed $ 500.00 . If you get insurance from or through us you will pay $ 0.00 for N/A of coverage.

This premium is calculated as follows:
☐ $ 0.00  Deductible, Collision Coverage  $ 0.00
☐ $ 0.00  Deductible, Comprehensive Cov.  $ 0.00
☐ Fire-Theft and Combined Additional Coverage  $ 0.00
☐ N/A  $ 0.00

Liability insurance coverage for bodily injury and property damage caused to others is not included in this Contract unless checked and indicated.

© 1995, 1996 Wolters Kluwer Financial Services - Bankers Systems™ Form JD-RSMVLZ-IL 8/23/2013 (Rev. 8/13)

☐ **OPTIONAL SERVICE CONTRACT:** With your purchase of the Vehicle, you have elected to agree to purchase a Service Contract to cover N/A
N/A
N/A
This Service Contract is not required to obtain credit. This Service Contract will be in effect for N/A
N/A

**GENERAL TERMS:** You have been given the opportunity to purchase the Vehicle and described services for the Cash Price or the Total Sale Price. The Total Sale Price is the total price of the Vehicle and any services if you buy them over time. You agreed to purchase the items over time. The Total Sale Price shown in the TRUTH IN LENDING DISCLOSURES assumes that all payments will be made as scheduled. The actual amount you will pay may be more or less depending on your payment record.
We do not intend to charge or collect, and you do not agree to pay, any finance charge or fee, that is more than the maximum amount permitted for this sale by state or federal law. If you pay a finance charge or fee that is contrary to this provision, we will, instead, apply it first to reduce the principal balance, and when the principal has been paid in full, refund it to you.
You understand and agree that some payments to third parties as a part of this Contract may involve money retained by us or paid back to us as commissions or other remuneration.
If any section or provision of this Contract is not enforceable, the other terms will remain part of this Contract. You hereby authorize us to correct any clerical errors or omissions made in completing this Contract and other documents related to this transaction, provided that any corrections we may make will not change any of the essential provisions or material terms of this Contract.

**NAME AND LOCATION:** You agree that your name and address indicated on page 1 are your exact legal name and your principal residence. You agree that your telephone number and place of employment shown on your credit application are accurate and current. You agree to promptly let us know if you change your name, address, telephone number or place of employment.

**PREPAYMENT:** You may prepay this Contract in full or in part at any time. Any partial prepayment will not entitle you to default in the future.
A refund of any prepaid, unearned insurance premiums may be obtained from us or from the insurance company named in your policy or certificate of insurance.

**SECURITY:** To secure your payment and performance under the terms of this Contract, you give us a security interest in the Vehicle, all accessions, attachments, accessories, and equipment placed in or on the Vehicle, together called Property, and proceeds of the Property. The payment secured to us by the Property and its proceeds includes, without limitation, your payment to us of the cash down payment, any deferred down payment, and any scheduled payment reflected in the Contract. Our interest will not extend to consumer goods unless you acquire rights to them within 10 days after we enter into this Contract, or they are installed in or affixed to the Vehicle. We may insert the identifying number or marks of the Property and the due date of the first installment if the Property is delivered after you sign this Contract. You also assign to us and give us a security interest in proceeds and premium refunds of any insurance and service contracts purchased with this Contract. If the box on page 1 is checked, you are also entering into a separate Wage Assignment Agreement that secures your payment under this Contract.

**OWNERSHIP AND DUTIES TOWARD PROPERTY:** By giving us a security interest in the Property, you represent and agree to the following:
A. You will defend our interests in the Property against claims made by anyone else. You will do whatever is necessary to keep our claim to the Property ahead of the claim of anyone else.
B. The security interest you are giving us in the Property comes ahead of the claim of any other of your general or secured creditors. You agree to sign any additional documents or provide us with any additional information we

10/9/2015 3:02:05 PM                                (page 2 of 6)

may require to keep our claim to the Property ahead of the claim of anyone else. You will not do anything to change our interest in the Property.

C. You will keep the Property in your possession in good condition and repair. You will use the Property for its intended and lawful purposes. Unless otherwise agreed in writing, the Property will be located at your address listed on page 1 of this Contract. You agree to provide us with written notice of at least 30 days prior to relocating to a different state than the one shown on page 1 of this Contract.

D. You will not attempt to sell the Property (unless it is properly identified inventory) or otherwise transfer any rights in the Property to anyone else, without our prior written consent.

E. You will pay all taxes and assessments on the Property as they become due.

F. You will notify us within 24 hours of any loss or damage to the Property. You will provide us reasonable access to the Property for the purpose of inspection. Our entry and inspection must be accomplished lawfully, and without breaching the peace. You will allow us to retain a copy of the keys to the Property.

**DEFAULT:** You will be in default on this Contract if any one of the following occurs (except as prohibited by law):

A. You fail to make any payment under this Contract when due, including any cash down payment, deferred down payment, and scheduled payment you owe us under the Contract.

B. You fail to do anything else you have agreed to do in this Contract.

C. Any statement or representation you made in your credit application is untrue or incorrect.

D. You fail to provide us: (i) with proof of employment, income, residence, insurance or repair to credit history; (ii) 12 personal references; or (iii) other information relating to the credit transaction within 3 business days after our written request for this information.

E. You die, become incompetent, generally fail to pay your debts as they become due, or become the subject of a voluntary or involuntary bankruptcy proceeding.

F. Any judgment, levy, attachment, writ of garnishment or other similar order is entered against you or the Property.

G. Any police or governmental agency seizes or impounds the Vehicle or starts forfeiture proceedings against the Property.

If you default, you agree to pay our reasonable attorneys' fees as permitted by a court of law, that we incur to collect or enforce this Contract, and fees for repossession, repair, storage and sale of the Property securing this Contract.

If an event of default occurs as to any one of you, we may exercise our remedies against any or all of you.

**RIGHT TO REINSTATE.** If you have paid an amount equal to 30% or more of the total of payments at the time of repossession, you may, within 21 days, reinstate this Contract and redeem (get back) the Property from us by tendering in a lump sum (a) the total of all unpaid amounts, including any unpaid delinquency or deferral charges due at the time of reinstatement; (b) performance necessary to reinstate any default other than nonpayment of the amounts due; and (c) all reasonable costs and fees incurred by us in retaking, holding, and preparing the Property for disposition and in arranging for the sale of the Property. Tender of payment and performance pursuant to this limited right of reinstatement restores to you your rights under this Contract as though no default had occurred. However, you have the right to reinstate this Contract and recover the Property from us only once on this Contract.

**REMEDIES:** If you are in default on this Contract, subject to any right to reinstate that you may exercise, we have all of the remedies provided by law and this Contract:

A. We may require you to immediately pay us, subject to any refund required by law, the remaining unpaid balance of the amount financed, finance charges and all other agreed charges. These amounts will earn finance charges from the date you are required to pay us at the rate described in the PROMISE TO PAY AND PAYMENT TERMS section until paid in full.

B. We may pay taxes, assessments, or other liens or make repairs to the Property if you have not done so. We are not required to do so. Any amount we pay will be added to the amount you owe us and will be due immediately. This amount will earn finance charges from the date paid at the post-maturity rate described in the PROMISE TO PAY AND PAYMENT TERMS section until paid in full.

C. We may require you to make the Property available to us at a place we designate that is reasonably convenient to you and us.

D. We may immediately immobilize, disable or take possession of the Property by legal process or self-help, subject to your right to reinstate the Contract, if any, and subject to your right to receive and/or submit Affidavits of Defense and/or Repossession, but in doing so we may not breach the peace or unlawfully enter onto your premises. We may then sell the Property and apply what we receive as provided by law to our actual and reasonable expenses and then toward your obligations.

E. Except when prohibited by law, you are responsible for any deficiency if the proceeds from the sale of property do not cover what you owe us, and we may sue you for those additional amounts.

By choosing any one or more of these remedies, we do not waive our right to later use another remedy. By deciding not to use any remedy, we do not give up our right to consider the event a default if it happens again.

You agree that if any notice is required to be given to you of an intended sale or transfer of the Property, notice is reasonable if mailed to your last known address, as reflected in our records, at least 10 days before the date of the intended sale or transfer (or such other period of time as is required by law).

You agree that, subject to your right to recover such property, we may take possession of personal property left in or on the Property securing this Contract and taken into possession as provided above.

---

**THIRD PARTY AGREEMENT**

By signing below you agree to give us a security interest in the Property described in the SALE section. You also agree to the terms of this Contract, except that you will not be liable for the payments it requires. Your interest in the Property may be used to satisfy the Buyer's obligation. You agree that we may renew, extend, change this Contract, or release any party or property without releasing you from this Contract. We may take these steps without notice or demand upon you.

You acknowledge receipt of a completed copy of this Contract.

_____   _____
Signature N/A                              Date

---

**INSURANCE:** You agree to buy property insurance on the Property protecting against loss and physical damage and subject to a maximum deductible amount indicated in the PROPERTY INSURANCE section, or as we will otherwise require. You will name us as lender's loss payee on any such policy. In the event of loss or damage to the Property, we may require additional security or assurances of payment before we allow insurance proceeds to be used to repair or replace the Property. You agree that if the insurance proceeds do not cover the amounts you still owe us, you will pay the difference. You may purchase or provide the insurance through any insurance company reasonably acceptable to us. You will keep the insurance in full force and effect until this Contract is paid in full.

**COLLATERAL PROTECTION INSURANCE NOTICE:** Unless you provide us with evidence of the insurance coverage required by your agreement with us, we may purchase insurance at your expense to protect our interests in your collateral. This insurance may, but need not, protect your interests. The coverage that we purchase may not pay any claim that you make or any claim that is made against you in connection with the collateral. You may later cancel any insurance purchased by us, but only after providing us with evidence that you have obtained insurance as required by our agreement. If we purchase insurance for the collateral, you will be responsible for the premiums for that



(page 3 of 6)

© 1995, 1996 Wolters Kluwer Financial Services - Bankers Systems™ Form JD-RSMVLZ-IL 8/23/2013 (Rev. 8/13)   10/9/2015 3:02:05 PM

insurance, including interest and any other charges we may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The premiums may be added to your total outstanding balance or obligation. The premiums may be more than the premiums for insurance you may be able to obtain on your own.

**OBLIGATIONS INDEPENDENT:** Each person who signs this Contract agrees to pay this Contract according to its terms. This means the following:
A. You must pay this Contract even if someone else has also signed it.
B. We may release any co-buyer or guarantor and you will still be obligated to pay this Contract.
C. We may release any security and you will still be obligated to pay this Contract.
D. If we give up any of our rights, it will not affect your duty to pay this Contract.
E. If we extend new credit or renew this Contract, it will not affect your duty to pay this Contract.

**WARRANTY:** Warranty information is provided to you separately.

**RETURNED CHECK CHARGE:** If you make any payment required by this Contract with a check, negotiable instrument, electronic payment or other payment device that is returned or dishonored, you agree to pay the maximum returned check fee permitted by applicable law. If not paid when due, we may add this fee to the unpaid balance of this Contract.

**LIQUIDATED DAMAGES:** If we allow you to return the Property and cancel your obligations under the Contract, other than because your credit history or credit references are unacceptable, you agree that we will incur damages in an amount that is difficult for you and us to predict as of the Contract date. Unless prohibited by applicable law, you agree that we, if we allow you to return the Property and cancel your Contract obligations, may retain as damages any property and money that you used as a down payment.

**JURY TRIAL WAIVER:** Notwithstanding the enforceability or applicability of any other provision of this Contract, you and we agree that you and we will give up and waive your and our respective rights to a trial by a jury, if any.

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

Used Car Buyers Guide. The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.

Spanish Translation: Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.

**DOCUMENTARY FEE.** A DOCUMENTARY FEE IS NOT AN OFFICIAL FEE. A DOCUMENTARY FEE IS NOT REQUIRED BY LAW, BUT MAY BE CHARGED TO BUYERS FOR HANDLING DOCUMENTS AND PERFORMING SERVICES RELATED TO CLOSING OF A SALE. THE BASE DOCUMENTARY FEE BEGINNING JANUARY 1, 2008, WAS $150.00. THE MAXIMUM AMOUNT THAT MAY BE CHARGED FOR A DOCUMENTARY FEE IS THE BASE DOCUMENTARY FEE OF $150.00 WHICH SHALL BE SUBJECT TO AN ANNUAL RATE ADJUSTMENT EQUAL TO THE PERCENTAGE OF CHANGE IN THE BUREAU OF LABOR STATISTICS CONSUMER PRICE INDEX. THIS NOTICE IS REQUIRED BY LAW. THE MAXIMUM DOCUMENTARY FEE FOR January 1, 2015 IS $ 168.43 .

**NOTICE OF POSSIBLE REFUND OF CREDIT LIFE OR DISABILITY INSURANCE PREMIUM.**
(1) IF YOU HAVE PURCHASED EITHER CREDIT LIFE OR CREDIT DISABILITY INSURANCE, OR BOTH, TO GUARANTEE PAYMENTS BEING MADE IN CASE OF YOUR DEATH OR DISABILITY, ON YOUR VEHICLE PURCHASED UNDER AN INSTALLMENT SALES CONTRACT, YOU MAY BE ENTITLED TO A PARTIAL REFUND OF YOUR PREMIUM IF YOU PAY OFF YOUR INSTALLMENT LOAN EARLY.
(2) IN CASE OF EARLY COMPLETE PAYMENT OF YOUR LOAN, YOU SHOULD CONTACT THE SELLER OF YOUR CREDIT LIFE OR CREDIT DISABILITY INSURANCE TO SEE IF A REFUND IS DUE. IF YOUR VEHICLE DEALER FINANCED YOUR LOAN, THE SELLER OF YOUR CREDIT LIFE OR CREDIT DISABILITY INSURANCE IS YOUR VEHICLE DEALER.

**ARBITRATION AGREEMENT**

A. **Mandatory Arbitration:** Unless otherwise stated in this agreement, any "Dispute" between the Parties shall, at the election of Buyer, Seller or Seller's Assignee ("the Parties"), be resolved by a neutral, binding arbitration, and not by a court of law. This procedure includes any Dispute over the interpretation, scope, or validity of this Contract, the arbitration agreement or the arbitrability of any issue, with the sole exception of the Parties' waiver of any right to bring a class action or to participate in a class action as provided for under paragraph F shall be solely determined by the appropriate court, if necessary. The arbitration agreement applies to the Parties, including their respective employees or agents, as to all matters which arise out of or relate to this Contract or are in any way connected with the purchase and sale or financing of the Vehicle, or any resulting transaction or relationship.

B. **Dispute:** The term "Dispute" means any action, dispute, claim, or controversy of any kind arising out of, in connection with or in any way related to the Contract, the sale of the Vehicle, financing, contracts, origination, servicing, service agreements, collection, reporting, or any other aspect whatsoever of the past, present, or future relationship or conduct of the Parties. The term "Dispute," includes without limitation: claims under federal or state consumer protection laws; claims in tort or contract; claims under statutes or common law; claims at law or in equity; other past, present or future claims, counterclaims, cross-claims, third party claims, interpleaders or otherwise; and

*(page 4 of 6)*

10/9/2015 3:02:05 PM

© 1995, 1996 Wolters Kluwer Financial Services - Bankers Systems™ Form JD-RSMVLZ-IL 8/23/2013 (Rev. 8/13)

any claim relating to the interpretation, applicability, enforceability or formation of this arbitration agreement, including, but not limited to, any claim that all or any part of this arbitration agreement, except paragraph F, is void, voidable or unconscionable.

C. **Facts about Arbitration:** Arbitration is a process in which a neutral arbitrator decides a dispute instead of a judge or jury. Each side has an opportunity to present some evidence to the arbitrator. A Party's ability to discover things may be limited. Arbitration proceedings are private and less formal than court trials. Other rights that the Parties might have in court might not be available in arbitration. An arbitrator issues an award. A court may then enforce the award like a court judgment. Courts rarely overturn an arbitrator's award.

D. **Rules:** If any Party elects arbitration of a Dispute, the Party asserting the Dispute shall commence the arbitration with either the American Arbitration Association ("AAA") (800-778-7879 or www.adr.org), or JAMS ("JAMS") (800-352-5267 or www.jamsadr.com). Any arbitration shall be conducted according to the applicable rules and procedures of AAA or JAMS in effect at the time the arbitration is commenced. If there is a conflict between the applicable rules and procedures of the AAA or JAMS and this arbitration agreement, this arbitration agreement shall control. The arbitration shall be conducted by a single arbitrator who shall be an attorney or retired judge. If for any reason the AAA or JAMS is unwilling or unavailable to administer any arbitration, the Parties shall attempt to reach an agreement on an alternative arbitration administrator or arbitrator. In the event the Parties cannot reach such an agreement, an alternative arbitration administrator or arbitrator may be appointed by a court in accordance with the Federal Arbitration Act ("FAA").

E. **Standards and Law:** The Parties agree that the Contract and purchase of the Vehicle involve interstate commerce and that this arbitration agreement is governed by the Federal Arbitration Act, 9 U.S.C. Sections 1 through 16 as amended ("FAA"). The arbitrator shall strictly apply applicable substantive law and applicable statutes of limitation consistent with the FAA and shall honor claims of privilege recognized at law.

F. **Class Action Waiver:** The Parties agree to give up any right they may have to bring a class action lawsuit or class arbitration, or to participate in either as a claimant. The Parties agree to give up any right to consolidate or join any arbitration proceeding with the arbitration of others. The Parties give up the right to serve as a private attorney general in any jurisdiction in which such procedure might be permitted. To the extent the Parties are permitted to file small claims under paragraph J, the Parties agree that any small claim may only be brought on an individual basis and that no small claim may be brought on a class or representative basis.

G. **Punitive Damage Waiver:** The Parties waive any right to seek or recover punitive damages in any Dispute. No arbitrator shall have the power or authority to award punitive damages.

H. **Fees and Costs:** The Parties shall pay the fees and costs specified by the applicable rules of the AAA or JAMS (or any alternative arbitration administrator agreed upon or appointed). In the event Buyer cannot pay the required fees and costs, Buyer may request that Seller and/or Seller's assignees advance those fees and costs on Buyer's behalf, and said request shall be considered in good faith. As part of any award, the arbitrator may assess the fees and costs associated with any arbitration in accordance with applicable law. The Parties shall be responsible for their own attorney's fees associated with any arbitration, unless otherwise allowed for under applicable law and awarded by the arbitrator.

I. **Self-Help:** Notwithstanding this arbitration agreement, the Parties retain the right to exercise self-help remedies and to seek provisional remedies from a court, pending final determination of the Dispute by the arbitrator. No Party waives the right to elect arbitration of a Dispute by exercising self-help remedies, filing suit, or seeking or obtaining provisional remedies from a court.

J. **Exceptions:** The Parties agree that this arbitration agreement is not applicable to "small claims" meaning those claims that either Party is entitled to file and maintain in an appropriate small claims court or any action where the total amount in controversy is no greater than $12,000, including any claims for attorney's fees and non-monetary relief.

K. **Severability:** If it is determined that any paragraph or provision in this arbitration agreement is illegal, invalid, or unenforceable, such illegality, invalidity or unenforceability shall not affect the other paragraphs and provisions of this arbitration agreement. The remainder of this arbitration agreement shall continue in full force and effect as if the severed paragraph or provision had not been included. Notwithstanding this severability provision, if a court of competent jurisdiction determines paragraph F to be void, illegal, invalid, or unenforceable, the Parties agree paragraph F shall not be severed and that this arbitration agreement shall be void in its entirety.

L. **Survival of Arbitration Agreement:** This arbitration agreement will survive and continue in full force and effect notwithstanding cancellation, termination, amendment, payment in full, discharge in bankruptcy, or other expiration or conclusion of the Contract or any other contract or transaction between the Parties, unless otherwise agreed in writing. In addition, Buyer understands and acknowledges that the rights and responsibilities afforded to Seller under this arbitration agreement survive any assignment of the Contract by Seller and that Seller can enforce this arbitration agreement in the event a Dispute arises after the assignment of the Contract.

M. **Right to Reject Arbitration:** If you do not want this arbitration agreement to apply, you may reject it by mailing a written notice to us c/o Byrider Franchising, LLC, 12802 Hamilton Crossing Blvd., Carmel, Indiana 46032 Attn: VP Franchise Operations that describes the Contract and states that you are rejecting the arbitration agreement. A rejection notice is only effective if it is signed by each Buyer, and the envelope that the rejection notice is sent in is postmarked no more than 10 calendar days after the date of the Contract. If you reject this arbitration agreement, it will not affect any other provisions of the Contract or your obligations under the Contract. If you do not properly reject this arbitration agreement, it will be effective as of the date of the Contract.

FOR ALL DISPUTES COVERED BY THIS ARBITRATION AGREEMENT, THE PARTIES HAVE AGREED TO WAIVE THEIR RIGHT TO A TRIAL BY JURY, THEIR RIGHT TO PARTICIPATE IN CLASS ACTIONS, AND THEIR RIGHT TO SEEK PUNITIVE DAMAGES. EXCEPT FOR DISPUTES AND CLAIMS NOT SUBJECT TO THIS ARBITRATION AGREEMENT, ARBITRATION SHALL BE IN PLACE OF ANY CIVIL LITIGATION IN ANY COURT AND IN PLACE OF ANY TRIAL BY JURY.

THE TERMS OF THIS ARBITRATION AGREEMENT AFFECT YOUR LEGAL RIGHTS. IF YOU DO NOT UNDERSTAND ANY TERMS OF THIS ARBITRATION AGREEMENT OR THE COST, ADVANTAGES OR DISADVANTAGES OF ARBITRATION, SEEK INDEPENDENT ADVICE BEFORE SIGNING THIS CONTRACT. BY SIGNING THIS CONTRACT, YOU ACKNOWLEDGE THAT YOU HAVE READ, UNDERSTAND AND AGREE TO BE BOUND BY EACH OF THE PROVISIONS, COVENANTS, STIPULATIONS AND AGREEMENTS SET FORTH ABOVE.



ASSIGNMENT BY SELLER: Seller sells and assigns this Retail Installment Contract and Security Agreement, (Contract), to the Assignee, its successors and assigns, including all its rights, title and interest in this Contract, and any guarantee executed in connection with this Contract. Seller gives Assignee full power, either in its own name or in Seller's name, to take all legal or other actions which Seller could have taken under this Contract. (SEPARATE AGREEMENT: If this Assignment is made "under the terms of a separate agreement" as indicated on page 6, the terms of this assignment are described in a separate writing(s) and not as provided below.)

Seller warrants:
A. This Contract represents a sale by Seller to Buyer on a time price basis and not on a cash basis.
B. The statements contained in this Contract are true and correct.
C. The down payment was made by the Buyer in the manner stated on page 1 of this Contract and, except for the application of any manufacturer's rebate, no part of the down payment was loaned or paid to the Buyer by Seller or Seller's representatives.
D. This sale was completed in accordance with all applicable federal and state laws and regulations.
E. This Contract is valid and enforceable in accordance with its terms.
F. The names and signatures on this Contract are not forged, fictitious or assumed, and are true and correct.
G. This Contract is vested in the Seller free of all liens, is not subject to any claims or defenses of the Buyer, and may be sold or assigned by the Seller.
H. A completely filled-in copy of this Contract was delivered to the Buyer at the time of execution.
I. The Goods have been delivered to the Buyer in good condition and have been accepted by Buyer.
J. Seller has or will perfect a security interest in the Property in favor of the Assignee.

If any of these warranties is breached or untrue, Seller will, upon Assignee's demand, purchase this Contract from Assignee. The purchase shall be in cash in the amount of the unpaid balance (including finance charges) plus the costs and expenses of Assignee, including attorneys' fees.

Seller will indemnify Assignee for any loss sustained by it because of judicial set-off or as the result of a recovery made against Assignee as a result of a claim or defense Buyer has against Seller.

Seller waives notice of the acceptance of this Assignment, notice of non-payment or non-performance and notice of any other remedies available to Assignee.

Assignee may, without notice to Seller, and without affecting the liability of Seller under this Assignment, compound or release any rights against, and grant extensions of time for payment to be made, to Buyer and any other person obligated under this Contract.

UNLESS OTHERWISE INDICATED ON PAGE 6, THIS ASSIGNMENT IS WITHOUT RECOURSE.

WITH RECOURSE: If this Assignment is made "with recourse" as indicated on page 6, Assignee takes this Assignment with certain rights of recourse against Seller. Seller agrees that if the Buyer defaults on any obligation of payment or performance under this Contract, Seller will, upon demand, repurchase this Contract for the amount of the unpaid balance, including finance charges, due at that time.

KEYS: You agree that we may keep a copy of the keys to the Vehicle until this Contract is paid in full.

Illinois law permits the buyer to assert all of his/her defenses equally against the sales finance company and the retail seller involved in this transaction.

CO-BUYER: A Co-Buyer is a person who agrees to be primarily responsible for paying the entire debt and who (1) actually receives the Vehicle or (2) is a parent or spouse of the Buyer, or (3) will be listed as an owner on the Vehicle's title. By signing below, (1) you confirm that you will actually receive possession of the Vehicle or will use it, or that you are a parent or spouse of the Buyer, or that you will be listed as an owner on the Vehicle's title; (2) you agree to be primarily obligated under this Contract; and (3) you consent to the Seller having a security interest in the Vehicle.

GUARANTOR: A Guarantor is a person who agrees to be liable on the debt only if the Buyer does not pay the Seller. The Guarantor will not actually receive the Vehicle, or be listed on the Vehicle's title, and will not be listed as an owner of the Vehicle.

ASSIGNMENT: This Contract and Security Agreement is assigned to Drake Holdings Inc d/b/a CNAC of Belleville, the Assignee, phone 618-257-0880. This assignment is made ☒ under the terms of a separate agreement.
☒ under the terms of the ASSIGNMENT BY SELLER on page 6.
☐ This assignment is made with recourse.
Seller: By _[signature]_
Date 10-9-2015

NOTICE TO BUYER
(1) Do not sign this agreement before you read it or if it contains any blank spaces. (2) You are entitled to a copy of the agreement you sign. (3) Under the law you have the right, among others, to pay in advance the full amount due and to obtain under certain conditions a partial refund of the finance charge. (4) This agreement contains an arbitration of disputes provision which governs certain disputes between the parties.

BY SIGNING BELOW BUYER AGREES TO THE TERMS ON PAGES 1, 2, 3, 4, 5 AND 6 OF THIS CONTRACT AND ACKNOWLEDGES RECEIPT OF A COPY OF THIS RETAIL INSTALLMENT SALES CONTRACT.

RETAIL INSTALLMENT CONTRACT

Buyer:
_[signature]_ Anelea Harrell   10-9-15
Signature / Date

_[signature]_   10/9/15
Signature / Date

Seller: By Drake Automotive Inc dba JD Byrider d/b/a J. D. Byri
_[signature]_   10-9-2015
Signature / Date

Guarantor:

_____
Signature / Date

I hereby guarantee the collection of the above described amount upon failure of the Seller named herein to collect said amount from Buyer named herein.

© 1995, 1996 Wolters Kluwer Financial Services - Bankers Systems™ Form JD-RSMVLZ-IL 8/23/2013 (Rev. 8/13)

10/9/2015 3:02:05 PM   (page 6 of 6)

# STATE OF ILLINOIS
## CERTIFICATE OF TITLE OF A VEHICLE

**VEHICLE IDENTIFICATION NO.** 2G1WB5EK5A1205503
2G1WB5EK5A1205503

**YEAR** 2010
**MAKE** CHEVROLET
**MODEL** IMPALA LT
**BODY STYLE** 4 DOOR
**TITLE NO.** 15301697031

**DATE ISSUED** 10/28/15
**ODOMETER** 124028 / 124028
**CCM**
**MOBILE HOME SQ. FT.**
**PURCHASED** 10/09/15 USED
**TYPE TITLE** ORIGINAL

**MAILING ADDRESS**
DRAKE HOLDINGS INC DBA CNAC
4101 N BELT W
BELLEVILLE IL 62226-5611

**LEGEND(S)**
ACTUAL MILEAGE

**OWNER(S) NAME AND ADDRESS**
ERICKA HAROLD
ANTIONE STEVENSON
1605 BAUGH AVE APY C
EAST SAINT LOUIS IL 62205

**FIRST LIENHOLDER NAME AND ADDRESS**
DRAKE HOLDINGS INC DBA CNAC
4101 N BELT W
BELLEVILLE IL 62226-5611

**SECOND LIENHOLDER NAME AND ADDRESS**

### RELEASE OF LIEN
The Lienholder on the vehicle described in this Certificate does hereby state that the lien is released and discharged.

Firm Name _____ By _____ Signature of Authorized Agent _____ Date _____
Firm Name _____ By _____ Signature of Authorized Agent _____ Date _____

**NEW LIEN ASSIGNMENT:** The information below must be on an application for title and presented to the Secretary of State.
Secured Party: _____    Address: _____

▶ Federal and State law requires that you state the mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

### ASSIGNMENT OF TITLE
The undersigned hereby certifies that the vehicle described in this title has been transferred to the following printed name and address:

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

▶ ODOMETER READING [NO TENTHS]
☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING-ODOMETER DISCREPANCY.

"If this vehicle is one of more than 5 commercial vehicles owned by me, I certify also that the vehicle is not damaged in excess of 33 1/3% of its fair-market value unless this document is accompanied by a salvage application."

Signature(s) of Seller(s) _____
Printed Name(s) of Seller(s) _____
I am aware of the above odometer certification made by seller.
Signature(s) of Buyer(s) _____    DATE OF SALE _____
Printed Name _____

I Jesse White, Secretary of State of the State of Illinois, do hereby certify that according to the records on file with my Office, the person or entity named hereon is the owner of the vehicle described hereon, which is subject to the above named liens and encumbrances, if any. IN WITNESS WHEREOF, I HAVE AFFIXED MY SIGNATURE AND THE GREAT SEAL OF THE STATE OF ILLINOIS AT SPRINGFIELD

CONTROL NO. M4221552

*Jesse White*

EXHIBIT B

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

IN RE:                              )
    ERICKA HAROLD,          )   BK No. 16-30526
                                    )
Debtor.                             )

## STATEMENT OF INTEREST IN COLLATERAL

Now comes movant, DRAKE HOLDINGS INC. d/b/a CNAC OF BELLEVILLE, and states that to the best of the movant's knowledge, information and belief:

[ ] the following additional entities may have an interest in the property:

_____

_____

[ X ] No other party other than movant and debtor(s) have an interest in the collateral.

/s/ Lawrence O. Taliana

TALIANA, BUCKLEY & ASA
216 N. Main Street
P.O. Box 627
Edwardsville, IL  62025